**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **ZANDRIA BANKS,** | : **CONSOLIDATED CASE NUMBERS:** |
| | :   **1:06CV1630 and 1:06CV2041** |
| **Plaintiff,** | : |
| | :  **JUDGE KATHLEEN O'MALLEY** |
| **and** | : |
| | : |
| **JENNIFER MEADWELL** | : |
| | : |
| **Plaintiff** | : |
| | : |
| **v.** | : |
| | :      **OPINION AND ORDER** |
| **UNITED STATES OF AMERICA,** *et al.*, | : |
| | : |
| **Defendants.** | : |
| | : |
| **and** | : |
| | : |
| **GREGORY M. SPARKS** | : |
| | : |
| **Defendant/ Third-Party** | : |
| **Plaintiff** | : |

Before the Court is Defendant United States of America's (the "government") *Motion to*

*Dismiss Case or, in the Alternative, Motion for Summary Judgment* ("Motion to Dismiss") (Doc.

22).[1]  In its motion, the government asks the court to dismiss Plaintiff Zandria Banks's ("Banks")

and Plaintiff Jennifer Meadwell's ("Meadwell") complaints under 28 U.S.C. § 1346(b) ("Federal

Tort Claims Act") (Doc.1).  Meadwell and Gregory Sparks ("Sparks") have filed briefs in opposition

---

[1]The plaintiffs filed separate complaints but the Court consolidated the cases because the plaintiffs were both traveling in the same car.  The government has filed a Motion to Dismiss in each case (Doc. 13 in case 06cv2041 and Doc. 22 in case 06cv1630).  The motions are virtually identical and address the same issue.  This Opinion and Order, therefore, resolves both motions and applies equally to each case.

to this motion (Doc. 26 and Doc. 25, respectively).  The government has filed replies in support of their motion.  Accordingly, this matter is ripe for adjudication.  For the reasons articulated below, the Defendants' Motion to Dismiss (Doc. 22) is **<u>GRANTED</u>**.

I.      **BACKGROUND**

In their complaints, Banks and Meadwell both allege that, on September 14, 2005, Defendant, Postal Employee, Gregory Sparks pulled out of the Beachwood Post Office in a United States Postal Service ("USPS") LLV vehicle, negligently failed to yield at a stop sign, and struck a vehicle driven by Banks in which Meadwell was a passenger.  Both plaintiffs filed complaints against Sparks and the government alleging that they sustained injuries from this incident as a result of Sparks's conduct.  Both plaintiffs also claim that the government is liable for these injuries because Sparks was acting within the scope of his employment at the time of the accident.  On October 13, 2006, the Court ordered that plaintiffs' cases be consolidated pursuant to a  motion by Defendant United States.

The facts are as follows: Sparks is an employee of the USPS.  (Plaintiff's Exhibits B, Gregory Sparks's Affidavit ("Sparks Aff."), ¶ 2; Defendant's Exhibit 1, Patricia Lakes Decl. ("Lakes Decl."), ¶ 3).  The vehicle operated by Sparks in the September 14, 2005 collision was owned by the United States.  Sparks normally worked as a letter carrier for the Beachwood USPS station.  (Lakes Decl. ¶ 5).  Due to a medical restriction imposed by his physician, however, Sparks was not performing his normal duties as a letter carrier on September 14, 2005.  (Lakes Decl. ¶ 11).  Instead, Sparks was working on a limited duty status and was not scheduled to deliver mail on that day.  Id.  At the time of the accident, Sparks was traveling to a physical therapy appointment scheduled for 12:00 p.m. (Sparks Aff. ¶ 4; Lakes Decl. ¶ 11).

2

In addition to the agreed facts, the government asserts that on September 14, 2005, Sparks clocked in at the Beachwood office at 8:12 a.m. (Lakes Decl. ¶ 10).  Sparks then worked preparing mail until 11:42 a.m., when he clocked out to attend his noon physical therapy appointment.  (Lakes Decl. ¶ 10).  According to the government, Sparks had previously requested and received this time off from work in order to attend the appointment.  (Lakes Decl. ¶ 11).  The government also provided evidence that Sparks was paid by his employer on an hourly basis. (Lakes Decl. ¶ 8). Neither the Plaintiffs nor Sparks disputed these assertions in their Opposition briefs.[2]

## II.  ANALYSIS

### A.  Legal Standard

There are two general categories into which attacks on a Court's  subject matter jurisdiction fall: facial attacks and factual attacks.  Fed. R. Civ. P. 12(b)(1); United States v. Richie, 15 F.3d 592, 598 (6th Cir. 1994).  A facial attack challenges the sufficiency of the pleading itself.  On such a motion, the Court must take all of the material allegations in the complaint as true and construe them in the light most favorable to the nonmoving party.  Id. (citing Scheuer v. Rhodes, 416 U.S. 232,

---

[2] To the extent Plaintiffs dispute that Sparks clocked out to attend his physical therapy appointment, they argue only that Sparks's permissive use of his employer's vehicle establishes that he was within the scope of his employment at the time of the accident (an issue that is addressed later in this Opinion and Order).  Plaintiffs have offered no evidence which calls into question whether Sparks did clock out or that he did so to attend his physical therapy appointment.  In contrast, the government has provided substantial evidence to support their assertion that, on September 14, 2005, Sparks clocked out at 11:42 a.m. to attend his noon physical therapy appointment.  (Lakes Decl. ¶ 10, 11, 12, 13, & 14; Defendant's Exhibit A ("Employee Everything Report" showing the exact times at which Spark clocked into and out of work at the USPS station in Beachwood).  Indeed, Plaintiffs do not deny that Sparks had a physical therapy appointment scheduled for noon on September 14, 2005, nor that Sparks was driving the USPS vehicle to this appointment when the accident in question occurred.  (Sparks Aff., ¶ 4 & 5).  Thus, the fact that Plaintiffs refuse to concede that Sparks clocked out from work is unsupported and, apparently, unsupportable.

235-37 (1974)).  The government's Motion to Dismiss under Fed. R. Civ. P. 12(b)(1), however, is

a factual attack on the Court's subject matter jurisdiction.  A factual attack, like the government's,

challenges the factual existence of subject matter jurisdiction.

Generally, on a Rule 12(b)(1) motion making a factual attack, the Court's inquiry is limited

to a determination of whether the challenged pleadings set forth allegations sufficient to show the

Court that it has jurisdiction over the subject matter: "No presumptive truthfulness applies to the

factual allegations, and the court is free to weigh the evidence and satisfy itself as to the existence

of its power to hear the case."  Id. (internal citations omitted); RMI Titanium Co. v. Westinghouse

Elec. Corp., 78 F.3d 1125, 1134 (6th Cir. 1996).  In reviewing such a motion, a district court is to

probe the facts and assess the validity of its own jurisdiction.  In doing to, the Court has wide

discretion to consider affidavits and documents outside the pleadings, and, if necessary, the Court

may even conduct a limited evidentiary hearing.  Ohio Nat'l Life Ins. Co. v. United States, 922 F.2d

320, 325 (6th Cir. 1990).

In connection with this analysis, the plaintiff bears the burden of demonstrating that the Court

has, and may appropriately exercise, jurisdiction over the subject matter.  RMI Titanium, 78 F.3d

at 1134.  When the plaintiff's allegations of jurisdictional facts are challenged by the defendant, "the

plaintiff bears the burden of supporting the allegations by competent proof."  922 F.2d at 327.

"Competent proof" requires that the plaintiff show that jurisdiction exists "by a preponderance of

the evidence." N.A.A.C.P.-Special Contribution Fund v. Jones, 732 F.Supp. 791, 794 (N.D. Ohio

1990) (citing McNutt v. Gen. Motors Acceptance Corp. of Indiana, 298 U.S. 187, 189 (1936)).  At

the same time, the defendant, "must at least submit some proof that the jurisdictional facts so alleged

do not exist."  922 F.2d at 327.  The Court may examine evidence of its power to hear a case and

4

must make any factual findings to determine whether it has jurisdiction.  <u>Knoll v. United States</u>, 58 F.3d 1087, 1090 (6th Cir. 1995); <u>Rogers v. Stratton Indus., Inc.</u>, 798 F.2d 913, 918 (6th Cir. 1986). In addition, when a court, "considers factual issues outside the record on a Rule 12(b)(1) motion, it must do so in a manner that is fair to the non-moving party."  58 F.3d at 1090.  Finally, the Court's examination of this evidence does not convert a Rule 12(b)(1) motion into a Rule 56 motion.  798 F.2d at 915.[3]

Here, the government challenges the power of the Court to hear Plaintiffs' Federal Tort Claims action on the grounds that Sparks's conduct was outside the scope of his employment at the time the accident occurred.

**B.    Discussion**

The United States generally maintains sovereign immunity from suit except for those instances in which Congress has specifically waived immunity, such as under the Federal Tort Claims Act.  The Federal Tort Claims Act provides the federal district courts with jurisdiction over claims against the United States,

> for injury or loss of property . . . caused by the negligent or wrongful act or omission of any employee of the United States while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law in the place where the act or omission occurred.

28 U.S.C.A. § 1346(b)(1).  Under this express waiver of immunity, district courts only have jurisdiction over claims against the United States if the employee in question was acting within the scope of his employment.

---

[3] Although the government alternatively seeks relief under Rule 56, because the Court grants the government's motion under Rule 12(b)(1), the Court does not address this alternative motion.

5

The government argues that Sparks was off-duty at the time the alleged negligent act was committed, and, therefore, Sparks was not acting within the scope of his employment.  According to the government, Sparks's physical therapy appointment was not part of his duties, and he was not authorized to drive the Postal Service vehicle in question to that appointment.  In opposition, Sparks alleges that he was acting within the scope of his employment because: (1) it was the custom and practice of USPS to allow employees to use USPS vehicles to attend medical appointments; (2) he was attending physical therapy as a result of a work-related injury with intent to rehabilitate himself in order to return to his normal position; and (3) Sparks's alleged negligence occurred while exiting the USPS driveway during his normal working hours.  The question before the Court, then, is whether an employee who has clocked-out to attend a physical therapy appointment on his lunch hour is acting within the scope of his employment when he uses a company vehicle to drive to that appointment.

Under the Federal Tort Claims Act, this issue is governed by Ohio law because the alleged negligence occurred in Ohio.  28 U.S.C. 1346(b)(1).  In Ohio, an employer is not liable for the actions of its employee if the employee is not acting within the scope of his employment at the time when, and at the place where, the alleged conduct occurred.  Kinsey v. Kinsey, 98 F. Supp. 2d 834, 835-36 (N.D. Ohio 2000).  For an Ohio employee to be acting within the scope of his employment, his conduct must: (1) be of the kind the actor is employed to perform; (2) occur substantially within the authorized limits of time and space; and (3) be actuated, at least in part, by a purpose to serve the master.  Anderson v. Toeppe, 688 N.E.2d 538, 543 (Ohio App. 1996); see also Martinek v. United States, 254 F. Supp. 2d 777, 783 (S.D. Ohio 2003).

It is settled law in Ohio that, "an employee who has a fixed and limited place of employment

6

is as a matter of law not in the course of his employment when traveling to and from his work at that place." Boch v. New York Life Ins. Co., 196 N.E.2d 90, 94 (Ohio 1964).  In addition, in Senn v. Lacker, 105 N.E.2d 49, 50 (Ohio 1952), the Supreme Court of Ohio held that the fact that an employer owns the vehicle driven by an employee is not sufficient in itself to render the employer liable for the conduct of the employee while driving that vehicle.  Furthermore, an employee is generally not considered to be acting within the scope of his employment when, "he is off duty, as at the noon hour."  Knecht v. Vandalia Med. Ctr., 470 N.E.2d 230, 233 (Ohio App. 1984). Consequently, an employer is not liable for conduct committed by an off duty employee during the noon hour unless the employee establishes that the his conduct in some way facilitated the employer's business.  688 N.E.2d at 543; see White Oak Coal Co. v. Rivoux, 102 N.E. 302, 306 (Ohio 1913); English v. Ziegler, No. 58776, 1991 Ohio App. LEXIS 3764, at *10-11 (Ohio App. Aug. 1, 1991).

Ohio courts base the "fixed location" rule on the principle that, when an employee travels back and forth from work at a fixed location, the employee confers, "no special benefit to the master other than making the servant's services available to the master at the place where they are needed." Boch, 196 N.E.2d at 93.  For example, in Faber v. Metalweld, Inc., 627 N.E.2d 642, 643 (Ohio Ct. App. 1992), the court held that an employee of a power plant was not acting within the scope of his employment when he was involved in an accident with another employee on an access road leading to the power plant.  In granting the employer's motion for summary judgment, the Faber court noted that the plant was a fixed location and that neither employee was acting within the scope of his employment because the defendant employee leaving the plant already had clocked out and the plaintiff employee had not yet clocked in to work.  Id. at 644.  Thus, the court found that, as a matter

of law, the employer plant could not be liable for either employee's negligent conduct because no special benefit was being conferred on the employer by the employees' driving.  Id.  Similarly, in Norman v. Estate of Keeler, No. 2003-P-0052, 2005 Ohio App. LEXIS 1814, **13-14 (Ohio Ct. App. April 22, 2005), the court held that a plaintiff engaged in a personal errand during her lunch hour was not acting within the scope of her employment, even though her employment contract specifically included that lunch breaks were part of the "workday" and her lunch hour was paid by the employer.

In Ohio, whether an employee was acting within the scope of his or her employment is usually a question of fact for the jury to determine.  Osborne v. Lyles, 587 N.E.2d 825, 829 (Ohio 1991).  An exception to this rule exists; however, "when reasonable minds can come to but one conclusion . . . [for then] the issue regarding scope of employment becomes a question of law."  Id.  Additionally, the court in Knecht held that it is:

> well-settled that if the facts are not in dispute or an inference cannot be drawn from the facts so as to give rise to a dispute, the question of whether an employee was acting within the scope of his employment is not one of fact, but is one of law for the court.

470 N.E.2d at 233.  Although the opposing parties dispute many facts, they agree that Sparks was on limited duty on the day of the incident and, accordingly, was working at a fixed location (the Beachwood Postal Branch) when he left work to attend his physical therapy appointment.  The government has presented reliable evidence which shows that Sparks clocked out at 11:42 a.m. (Lakes Decl. ¶ 10).  The Court may take this evidence into account when considering the government's factual attack on the court's subject matter jurisdiction.  RMI Titanium, 78 F.3d at 1135.

8

As noted above, for Sparks to be acting within the scope of his employment under Ohio law, his conduct must: (1) be of the kind the actor is employed to perform; (2) occur substantially within the authorized limits of time and space; and (3) be actuated, at least in part, by a purpose to serve the master. Anderson, 688 N.E.2d at 543. With respect to the first element, Sparks's conduct at the time of the accident was not "of the kind" he was employed to perform for USPS. Id. Prior to and on September 14, 2005, Sparks's limited duty consisted of packing mail and placing the mail on USPS vehicles. This work did not include driving a USPS vehicle, to perform his normal letter carrier duties or otherwise. On limited duty, Sparks only packed the mail cars for other employees to deliver, and he performed this duty solely at the fixed location of the USPS center in Beachwood.[4] Thus, at all relevant times, Sparks's duties did not encompass driving a USPS vehicle. Consequently, any injuries which Sparks may have caused when driving a USPS vehicle while on limited duty could not have occurred within the scope of his employment.

Regarding the second element, although Sparks's alleged negligence took place within the broad span of a normal work day, the government has presented evidence that Sparks clocked out at 11:42 a.m. to attend his noon appointment. Accordingly, the accident occurred while Sparks was clocked out for the noon hour and during the time period for which Sparks had requested and received leave to go to his appointment. Sparks has not challenged this assertion. Under Ohio law, an off-duty employee attending an appointment at the noon hour is not acting within the scope of his employment absent additional evidence that the employee is in some way facilitating the employer's

_____

[4] It is also noteworthy that the USPS vehicle Sparks was operating was not carrying any mail when the accident occurred. This further demonstrates that, even if Sparks had been performing his normal duties as a mail carrier immediately prior to his lunch hour, he was not using a USPS vehicle to perform any letter carrying duties *at the time of the accident*.

business. <u>Knecht</u>, 470 N.E.2d at 233 (holding that an employee is not usually considered to be acting within the scope of his employment when off-duty at the noon hour).

The third prong of the inquiry asks whether Sparks's conduct was, "actuated, at least in part, by a purpose to serve" the USPS. Clearly, the physical therapy appointment primarily benefitted Sparks in both his recovery and return to work. <u>Anderson</u>, 688 N.E.2d at 543. Sparks's only assertion relevant to this prong is his claim that he attended physical therapy with the intent to accelerate his return to his normal duties, thereby also benefitting USPS. While Sparks may be correct that the USPS stood to benefit from his speedy return to his normal duties, his desire to rehabilitate himself quickly is not sufficient to satisfy this prong. <u>See</u> <u>Boch</u>, 196 N.E.2d at 93 (denying that an employee was in the scope of his employment where the employee conferred "no special benefit to the master other than making the servant's services available to the master at the place where they are needed."). Rather, in <u>Posin v. A.B.C. Motor Hotel, Inc.</u>, 344 N.E.2d 334, 339 (Ohio 1976), the Supreme Court of Ohio held that the conduct in question must, "fairly and reasonably be deemed to be an ordinary and natural incident or attribute to the service to be rendered, or a natural, direct, and logical result of it." In other words, the act must be one that, "may reasonably be done within the time of the employment." <u>Tarlecka v. Morgan</u>, 181 N.E. 450, 452 (Ohio 1932). Simply stated, there is no indication that personal appointments of any nature were within the scope of Sparks's employment, the existence of a tangential benefit to the employer notwithstanding.

The primary factual disputes between the parties focus on whether Sparks received permission to use the USPS vehicle to attend the appointment, (<u>Compare</u> Sparks Aff. ¶ 5 <u>with</u> Lakes Decl. ¶ 18 & 19), and whether it was the custom and practice of USPS to allow its employees to use

10

vehicles for personal appointments.  (<u>Compare</u> Sparks Aff. ¶ 6 <u>with</u> Lakes Decl. ¶ 7).  These disputes are not relevant, however, where, as here, there is no question that the employee was not acting in *any* official capacity for the employer at the time of the accident.  The undisputed fact is that, with or without permission to use the vehicle, Sparks was acting in a purely personal capacity at the time of the accident.  Sparks was not paid for the time he spent driving to, attending, and driving from physical therapy.  Moreover, it is undisputed that, in order to attend his physical therapy appointment, Sparks needed to request, and receive, leave to clock out from a position for which he was paid by the hour, and to depart the fixed location where all his work duties were to be performed.  These facts demonstrate that the USPS did not consider the physical therapy appointments to be within the scope of Sparks's employment or to significantly further the USPS's business.

Thus, even if the Court assumes that Sparks was able to establish that he had permission to drive the USPS vehicle to his physical therapy appointment, that fact is irrelevant if the conduct of driving to the physical therapy appointment was not within the scope of his employment as defined by Ohio law.  It is settled law in Ohio that, "the owner of an automobile is not liable in an action for damages for injuries to or death of a third person caused by the negligence of an employee in the operation of the automobile, unless it is proven that the employee, at the time, was engaged upon his employer's business acting within the scope of his employment."  <u>Jackson v. Frederick</u>, 89 N.E.2d 645, 646 (Ohio 1949) (internal quotations and citations omitted); <u>see</u> <u>Mider v. United States</u>, 322 F.2d 193, 197 (6th Cir. 1963) (holding that, "[i]n Ohio, there can be no vicarious liability for a servant's tort if the negligent act occurs when the servant, although using his master's vehicle, is off duty or is on a personal excursion for his own purposes"); <u>White Oak</u>, 102 N.E. at 306 (Ohio 1913);

11

Hillman v. Service Packing Co., 36 N.E.2d 433, 434 (Ohio Ct. App. 1940) (holding that a corporation was not liable for a collision involving one of its automobiles because the driver, the corporation's president, was on a personal mission and was not using the automobile to transact any business for the corporation at the time of the collision). In addition, the Supreme Court of Ohio has held that a prima facie case of negligence is not made against an employer upon the mere showing that he was the owner of the automobile negligently operated by his employee. White Oak, 102 N.E. at 306. In Elms v. Flick, 126 N.E. 66, 69 (Ohio 1919), the Supreme Court held that, "where an employer loans his automobile to an adult employee, who is an experienced and competent driver, to use, not on any business of the employer but for the exclusive benefit or pleasure of the employee, the employer is not liable for the negligence of the driver." Therefore, because the evidence demonstrates that Sparks's conduct did not fall within the scope of his employment as defined by Ohio law, the government is not liable for any injuries Sparks may have negligently caused at the time in question.

**III.  CONCLUSION**

The fixed location rule dictates that an employee is not within the scope of his employment when driving to and from a fixed place of employment absent additional evidence demonstrating that the employee's conduct was in furtherance of the employer's business. Anderson, 688 N.E.2d at 543. At the time of the accident, Sparks was on limited duty working only at the USPS station in Beachwood. Consequently, the fixed location rule applies. There is no evidence which demonstrates that Sparks's physical therapy appointment would significantly further the USPS's business. Applying the law and three factor test to the undisputed facts, the Court finds that Sparks was not acting within the scope of his employment at the time the accident occurred on September

12

14, 2005.  See Leach v. Walls, 993 F.Supp. 1103, 1107 (N.D. Ohio 1997) (holding that the undisputed facts were sufficient to establish that the defendant, a USPS mail carrier,  was not acting within the scope of his employment).  Accordingly, Defendant the United States is not liable under the Federal Tort Claims Act, and its Motion to Dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) must be **GRANTED**.

With respect to the claims that plaintiffs still retain against Defendant Sparks, the actions that have been consolidated by the Court here were originally filed in Federal Court.  Because Sparks was a government employee allegedly acting with the scope of his employment at all relevant times, both actions asserted that jurisdiction was proper under various federal statutes. Plaintiffs, therefore, named both Sparks, as a federal employee, and the United States, as his employer, as defendants in the actions.  Now that the United States has been dismissed as a defendant, however, and given the conclusion that Sparks was not acting within the scope of his employment as a federal employee at the time of the accident, there remain no claims over which this Court has original jurisdiction.  The remaining claims are state law claims over which this Court has no continuing jurisdiction (the parties are not diverse and the amount in controversy is less than the jurisdictional floor for diversity claims).  Accordingly, the Court declines to exercise supplemental jurisdiction over those claims and both of the actions are **DISMISSED**.  See U.S.C. § 1367(c)(3).

**IT IS SO ORDERED.**

s/Kathleen M. O'Malley
**KATHLEEN McDONALD O'MALLEY**
**UNITED STATES DISTRICT JUDGE**

**Dated: July 16, 2007**

13